**SO ORDERED.**

**SIGNED this 25th day of June, 2018.**



Dale L. Somers
Dale L. Somers
United States Chief Bankruptcy Judge

_____

Designated for print publication
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In Re:

**WB SERVICES, LLC,**                                       **CASE NO. 16-10759**
                                                            **CHAPTER 7**
                        **DEBTOR.**

**CARL B. DAVIS, Trustee,**

                        **PLAINTIFF,**

**v.**                                                      **ADV. NO. 17-5074**

**KICE INDUSTRIES, INC.,**

                        **DEFENDANT.**

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Kice Industries, Inc. (Kice), moves for summary judgment on the

Chapter 7 Trustee's preference claim under 11 U.S.C. § 547.[1]  Kice was a subcontractor of Debtor WB Services, LLC (Debtor), which was the prime contractor for the construction of a project on property owned by East Kansas Agri-Energy, LLC (EKAE or Owner).  Within 90 days before Debtor filed for relief under Chapter 7, EKAE paid Kice on a past due account by a check payable jointly to Debtor and Kice.  The Trustee seeks to recover the payment as a preferential transfer.  Kice asserts it is entitled to summary judgment because the transfer it received was not "an interest of the debtor in property" as required to make the payment a preference under § 547(b), or because even if the transfer was preferential, the new value defense of § 547(c)(1) bars the Trustee's recovery.[2]

For the reasons examined below, the Court rejects Kice's arguments that the transfer was not preferential.  The Court also finds that the new value defense may defeat the Trustee's claim, but the uncontroverted facts are insufficient for the Court to rule on this issue, necessitating a trial.

## UNCONTROVERTED FACTS.

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013.  D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure for Bankruptcy Court at 12 (March 2018).  Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).  There is no objection to venue or jurisdiction over the parties.
    Future references to title 11 in the text shall be to the section number only.

[2] Plaintiff Carl B. Davis, the Chapter 7 Trustee, appears by Kenneth H. Jack of Davis & Jack, L.L.C.  Defendant Kice appears by Martin J. Ufford and Geron J. Bird of Hinkle Law Firm LLC.

2

EKAE as Owner and Debtor WB as Contractor entered into a Design-Build Agreement Between Owner and Contractor dated July 15, 2014 (the Contract), for the construction of a renewable diesel facility on real property owned by EKAE (the Project).

Section 9.2.4.2 on the contract provides:

> 9.2.4.2 RESPONSIBILITY FOR LIENS. If Owner has made all payments in the time required by this article, Contractor shall, within a reasonable time after filing, cause the removal of any liens filed against the premises or public improvement fund by any party or parties performing labor or services or supplying materials in connection with the Work. If Contractor fails to take such action on a lien, Owner may cause the lien to be removed at Contractor's expense, including bond costs and reasonable attorneys' fees.[3]

Section 10.1.1.1 provides:

> 10.1.1.1 Provided Contractor has been paid in accordance with this Agreement, Contractor shall keep the Worksite free from all liens, charges, claims and judgments, security interests or encumbrances ("Liens") arising out of the performance of the Work and shall defend, indemnify and hold harmless Owner, lenders, and the Worksite from and against all costs, charges, expenses, including reasonable attorneys' fees related to any Liens, that Owner may incur resulting from or arising out of such Liens. Contractor shall take prompt steps to discharge or bond off any such Lien filed against the Worksite by any Subcontractor, sub-subcontractor, or Material Supplier.[4]

Debtor WB as Contractor and Kice as Subcontractor entered into a contract dated November 11, 2014, under which Kice agreed to supply labor and material for the

---

[3] Doc. 18-3 at 2.

[4] *Id.* at 3.

3

Project. The subcontract provided for Kice to submit applications for partial payment as work progressed, and for approved applications to be paid within 30 days of receipt.

In late 2015 and early 2016, representatives of EKAE and Debtor expressed concerns in ongoing conversations about whether the subcontractors and suppliers for the Project were being paid in a timely manner. In January 2016, Debtor was behind on making payments to Kice, and on January 20, 2016, Kice stopped work on the Project due to Debtor's failure to pay.

In February and March 2016, representatives of Debtor and EKAE discussed how to pay Debtor for work on the Project while assuring subcontractors and suppliers were paid. EKAE recommended issuing joint checks, payable to Debtor and subcontractors or suppliers, and Debtor did not oppose that proposal. Under the agreed procedure, EKAE would issue checks jointly payable to Debtor and subcontractors or suppliers, a representative of Debtor would come to EKAE's offices and endorse the checks, and EKAE would mail the checks to the subcontractors and suppliers. Using this procedure, EKAE intended to control the application of the funds it would pay.

Debtor prepared two conditional lien waivers for Kice to complete as a condition for receiving the past due funds it was owed. One is for $79,581.35 and the other is for $3,080.00. Both waivers state that they cover a progress payment for labor, services, equipment, or material furnished to Debtor through February 23, 2016. Kice executed both waivers on February 24, 2016, and returned them to Debtor. Before it received the check on March 7, 2016, Kice had a right to file a subcontractor's lien against the Project

4

property.

Debtor submitted applications for payment to EKAE for work on the Project on February 9, 2016, February 23, 2016, and March 4, 2016. On March 4, 2016, EKAE issued six checks jointly payable to Debtor and six different subcontractors, including a check jointly payable to Debtor and Kice for $118,191.35. The amount of this check was for the outstanding amount owed for Kice's work on the Project, although the lien waivers Kice had signed covered only $82,661.35 of that balance. A representative of Debtor came to the EKAE facility and endorsed the check, and EKAE then mailed it to Kice. Kice received the check and deposited it on March 7, 2016, which was within 90 days of January 20, 2016, the date Kice last performed work on the Project. On its financial records, Debtor entered $118,191.35 as a payment received from EKAE.

Debtor filed for relief under Chapter 7 on April 28, 2016. The Chapter 7 Trustee filed his complaint in this action on June 19, 2017. He alleges that Kice's receipt of the joint payee check for $118,191.35 was a preferential transfer that should be avoided, and prays for judgment in the amount of $118,191.35, plus interest and costs.

**ANALYSIS.**

The resolution of preference litigation involving a bankrupt general contractor in the construction industry presents unusual concerns because of the customs and practices of the industry. As one court has observed:

> Like the law merchant of an earlier day, the building trades have gradually created a set of commercial expectations as the result of the customs and practices of the

5

> industry. The nature of the industry is such that the
> commercial expectations of the parties are defeated when a
> building contractor or subcontractor does not use accounts
> paid to him on a job to pay subcontractors or materialmen.
> Unless the parties see that construction funds are properly
> applied down the line, the liabilities of the parties up the line
> are affected. The unpaid workers [and subcontractors and
> suppliers] must undertake the lengthy and wasteful process of
> filing, perfecting and foreclosing on their mechanics liens.
> The owner's property and the construction lender's security
> are encumbered.[5]

Although preference claims asserted to recover payments to suppliers and subcontractors

when a general contractor becomes bankrupt appear to be a frequent occurrence, the

application of the Bankruptcy Code in that context remains unsettled.[6] Courts appear to

be searching for a coherent approach that properly takes into account the multiple

interests involved.

## A. Positions of the Parties.

The Trustee's complaint alleges that the transfer of $118,191.35 to Kice in

payment for services under its subcontract with Debtor satisfies all of the elements of a

preferential transfer under § 547(b). While Kice concedes that most of the elements of a

preferential transfer are present, it contends it is entitled to judgment in its favor because

the uncontroverted facts fail to show that the payment was a transfer of an interest of

---

[5] *Selby v. Ford Motor Co.*, 590 F.2d 642, 647 (6th Cir. 1979).

[6] *See* J. Henk Taylor, *Structuring Construction Settlements to Avoid Preference Liability*, 9 J. of the Am. Coll. of Construction Lawyers 3 (Jan. 2015); William L. Esser IV, *Subcontractors and Material Suppliers Beware: Preference Claims in Contractor Bankruptcies*, 26 Am. Bankr. Inst. J. 22 (June 2007); Michael B. Lubic and Jennifer M. Phelps, *Contractors' Joint-Check Agreements: Use at Your Peril*, 20 Am. Bankr. Inst. J. 16 (Mar. 2001).

Debtor in property, or, alternatively, the payment did not diminish the bankruptcy estate because EKAE had a right of setoff against Debtor.  Kice further contends that even if all of the elements of a preferential transfer are present, it is entitled to judgment under the new value defense of § 547(c)(1).

**B.  Only transfers of interests of Debtor in property may be avoided as preferential.**

Section 547(b) grants the Trustee the right, under stated circumstances, to avoid "any transfer of an interest of the debtor in property."  When moving for summary judgment, Kice's primary argument is that there was no transfer of an interest of Debtor in property.  The Supreme Court has stated that "'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."[7]  Section 541 "delineates the scope of 'property of the estate' and serves as the postpetition analog to § 547(b)'s 'property of the debtor.'"[8]  Property of the estate under § 541(a)(1) includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  "For purposes of most bankruptcy proceedings, '[p]roperty interests are created and defined by state law.'"[9]

The first step in determining whether Debtor had an interest in the property

---

[7] *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990).

[8] *Id.* at 59.

[9] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) (*quoting Butner v. United States*, 440 U.S. 48, 55 (1979)).

transferred is to identify the property interests in issue. Here, there was a payment made to Kice by a joint check, which itself is physical property. More importantly, the check directed payment of $118,191.35 to Kice, and the uncontroverted facts establish that $118,191.35 is the amount that EKAE owed Debtor for Kice's performance of the subcontract between Kice and Debtor. In the following analysis, when referring to the joint payee check, the Court will be referencing not only the physical piece of paper but also the right to payment represented by the check.

**C. Debtor had an interest in the property transferred to Kice.**

**1. The Tenth Circuit's *Davidson* opinion.**

When arguing that Debtor had no interest in the payment made by the joint payee check, Kice asserts that "[c]lear and unequivocal precedent from the Tenth Circuit establishes that [the] Kice check is not an interest of the Debtor in property because (1) the funds were earmarked for Kice; (2) EKAE had an independent obligation to pay Kice; and (3) the Debtor lacked the requisite control over the funds."[10] The case cited is *Davidson*,[11] but the Court rejects Kice's argument that it compels the result urged, and finds instead that other Tenth Circuit precedent requires the conclusion that there was a transfer to Kice of an interest of Debtor in property.

In *Davidson*, Zions First National Bank brought an adversary proceeding against

---

[10] Doc. 18 at 10-11.

[11] *Zions First Nat'l Bank, N.A., v. Christiansen Bros., Inc. (In re Davidson Lumber Sales, Inc.)*, 66 F.3d 1560 (10th Cir. 1995).

8

Christiansen Brothers, Inc. (Christiansen), a general contractor, to enforce a security

interest in the Chapter 11 debtor Davidson Lumber Sales' accounts receivable that

Christiansen owed for goods it bought from the debtor postpetition. The debtor had

bought materials from two suppliers and resold them to Christiansen for use on the

project, but had not paid the suppliers for the materials. Christiansen's contract with the

project owner required it to deliver the project free of mechanics liens. Christiansen

issued a joint check to one of the suppliers and the debtor as payment for the materials the

debtor had purchased from that supplier and resold to Christiansen. The other supplier

filed a lien on the project, and Christiansen agreed to and did pay that supplier directly in

return for the release of its lien. After the foregoing payments, the debtor advised

Christiansen that Zions had a security interest in the debtor's accounts and stated that it

"declined to authorize payment of these accounts to anyone but the bankruptcy estate."[12]

The bankruptcy court held that under Utah's law of setoff, Christiansen's

payments as a general contractor to suppliers who had not been paid by the debtor created

a defense to Christiansen's obligation to pay the accounts receivable to the debtor and

therefore to the bank. On appeal the district court reversed. On further appeal, the Tenth

Circuit affirmed the bankruptcy court's finding that Utah law would permit a general

contractor who pays a supplier in order to prevent or discharge a lien to set that payment

off against amounts it owes to the defaulting subcontractor. The Tenth Circuit also

---

[12] *Id*. at 1563.

rejected Zions' arguments that several provisions of the Bankruptcy Code pertaining to postpetition financing, use of cash collateral, setoff, and the automatic stay were violated by the allowance of setoff. It relied on "those cases holding that when a general contractor pays a supplier on the basis of an independent legal obligation, those payments do not become part of the bankruptcy estate."[13] Because Christiansen paid the suppliers as a result of an independent legal duty imposed by the contract between Christiansen and the project owner to deliver the project free of mechanics liens, such payments were available for setoff against the debt that Christiansen owed the debtor "and are not considered part of the bankruptcy estate."[14] In a footnote, the Tenth Circuit also stated that "[t]he funds paid by Christiansen to [one of the suppliers] by joint payee check are also excluded from the bankruptcy estate under the doctrine of earmarking."[15] Accordingly, there was no violation of § 363(c)(2), addressing the use of cash collateral.[16] There also was no violation of the § 362 stay, which generally applies to actions with respect to prepetition property of the debtor and not to the setoff of mutual postpetition debts.[17]

   **2. Debtor's interest in funds paid to Kice by a joint payee check was not removed from the bankruptcy estate by the earmarking doctrine.**

---

[13] *Id*. at 1567.

[14] *Id*. at 1568.

[15] *Id*. at 1568 n. 10.

[16] *Id*. at 1568-69.

[17] *Id*. at 1569.

10

Kice's first argument based on *Davidson* is that Debtor had no interest in the funds it received because they were removed from Debtor's bankruptcy estate by the earmarking doctrine. A transfer may be avoided as a preference only if it was "a transfer of an interest of the debtor in property."[18] Earmarking is a judicially-created doctrine that precludes the avoidance of transfers of property "when a new creditor pays a debtor's existing debt to an old creditor."[19] Because it is a judicially-created exception to the definition of a preferential transfer, the doctrine is narrowly construed.[20] The doctrine arose under the Bankruptcy Act in codebtor cases when "the new creditor, who was obligated on an existing debt as a guarantor or surety, provided the debtor with funds to pay the old creditor."[21] Numerous cases have extended the doctrine to situations where the new creditor was not obligated on the debt but merely provided funds to the debtor for the specific purpose of enabling the debtor to pay the old creditor.[22]

In the Tenth Circuit, the circumstances where the earmarking doctrine may apply to provide a defense to preference liability are unclear. The Tenth Circuit BAP in *Moses*, after thoroughly examining case law and policy considerations, concluded that "when determining whether a transfer is avoidable under § 547, the earmarking doctrine should

---

[18] 11 U.S.C. § 547(b).

[19] *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 645 (10th Cir. BAP 2000).

[20] 5 *Collier on Bankruptcy*, ¶ 547.03[2][a] at 547-21 to -22 (Richard Levin & Henry J. Sommer, eds.-in-chief, 16th ed. 2018).

[21] *Moses,* 256 B.R. at 645.

[22] *Id*. at 646.

not be extended beyond codebtor cases,"[23] where "the new creditor, who was obligated on an existing debt as a guarantor or surety, provided the debtor with funds to pay the old creditor."[24] The reasoning supporting that application of the doctrine was that

> the codebtor's payment [using its own funds] to the old creditor did not constitute a transfer of the debtor's property, and there was no diminution of the debtor's estate inasmuch as the amount available for unsecured creditors remained the same as before the transfer regardless of the debtor's control of the transferred funds. Courts also noted that earmarking was equitable because if the transfer were avoided, the codebtor would be subject to double liability.[25]

The BAP's rationale for holding that the doctrine should not be extended when there is no codebtor was that application of the doctrine would help neither the new creditor nor the debtor; the only person aided would be the old creditor, "'who had nothing to do with earmarking the funds, and who, in equity, deserves no such benefit.'"[26]

The Tenth Circuit has not decided whether the doctrine should be so limited.[27] In *Marshall,* the Circuit cited *Moses* but did not address its analysis, and stated that "[e]armarking, even if extended beyond the codebtor context, *only* applies when the

---

[23] *Id*. at 651.

[24] *Id*. at 645.

[25] *Id*. at 646.

[26] *Id*. at 647 (*quoting McCuskey v. Nat'l Bank (In re Bohlen Enters., Ltd.)*, 859 F.2d 561, 566 (8th Cir. 1988)).

[27] *Parks v. FIA Card Services, N.A., (In re Marshall)*, 550 F.3d 1251, 1257 (10th Cir. 2008).

12

[new] lender *requires* the funds be used to pay a specific debt."[28]  It then held that the extended doctrine would not provide a defense to the preferential transfer claim against credit card lender MBNA where, within 90 days prepetition, the debtors used their Capital One credit card accounts to make payments on their MBNA accounts.  Capital One had not restricted the debtors' use of the loan proceeds; it had simply honored their instructions to pay MBNA.  The earmarking doctrine was therefore inapplicable.

In this case, the payment of Debtor's subcontractor by the joint payee check issued by EKAE does not come within the scope of the earmarking doctrine as stated in either *Moses* or *Marshall*.  EKAE was not a guarantor of Debtor's obligations to its subcontractors.  EKAE was not a surety on the Project.  EKAE was not a lender advancing funds specified (earmarked) for payment to the subcontractor.  EKAE was the owner of the Project and owed Debtor money for work on the Project.  The joint checks transferred funds to the subcontractors (including Kice) and suppliers that would otherwise have been disbursed to Debtor for payment of those same subcontractors and suppliers.  The transfers in this case are not within the scope of the earmarking doctrine as stated in either *Moses* or *Marshall*.

The question becomes the weight this Court should ascribe to the Tenth Circuit's footnote in *Davidson* that "the funds paid by Christiansen [a general contractor] to [a supplier of goods to Davidson, a subcontractor.] by joint check are also excluded from the

---

[28] *Id.* (emphasis supplied).

bankruptcy estate under the doctrine of earmarking."[29]  For the following reasons, the

Court concludes that this statement in *Davidson* does not control the outcome of this case.

First, *Davidson* is factually distinguishable.  It was not a preference case and it

involved postpetition transactions.  The case was a priority dispute between Zions, a

postpetition creditor of the debtor with a perfected security interest in the debtor's

accounts receivable, and Christiansen, a general contractor that paid two of the debtor's

unpaid suppliers and had the right to offset those payments against amounts it owed the

debtor.  The debtor was a subcontractor, not the general contractor.  The payor was the

general contractor, not the owner of the construction project.  There was no agreement

between Christiansen and the debtor that one of the suppliers would be paid by a joint

payee check.  Here, Debtor and EKAE agreed that a payment on behalf of Debtor would

be made by EKAE's joint payee check.[30]

Second, *Marshall*, which was decided in 2008, is inconsistent with *Davidson*,

which was decided in 1995.  *Marshall* recognizes that the earmarking doctrine applies in

the codebtor context and, if extended to a payment by a new lender, "only applies when

the lender requires the funds be used to pay a specific debt."[31]  In *Davidson,* Christiansen,

who paid the suppliers, was neither a codebtor nor a lender.  To imply, as does *Davidson*,

that the earmarking doctrine applied because a joint payee check was used is overly

---

[29] *Davidson*, 66 F.3d at 1568, n. 10.

[30] Doc. 19-7 at 4.

[31] *Marshall,* 550 F.3d at 1257.

14

broad. Under *Marshall*, only if a joint check is used in the situation where earmarking is a recognized defense could a transfer by a joint check not be a transfer of an interest of the debtor in property for purposes of § 547(b) because of the earmarking doctrine.[32]

Third, this Court finds the authorities cited in support of the *Davidson* statement that the earmarking doctrine applies to payments by a joint payee check are not persuasive. In support of its finding, the *Davidson* opinion states:

> It is generally recognized that where the payee [sic — should be "payor"] controls the application of funds by requiring dual endorsement before the check can be negotiated, the funds are claimed to be earmarked funds [insured] on the specific condition that a joint payee shall receive the proceeds, the Debtor who is already a named payee is merely deemed to be a conduit for those funds, which did not become the property of the Debtor's estate.[33]

The foregoing is a quotation from *Winsco Builders*.[34] *Winsco* included no analysis but cited *Chase & Sanborn*,[35] a fraudulent transfer case, where the court noted that the trustee relied on a rule from preferential transfer cases that where the source of the funds was a party other than the debtor, the payment to the creditor is generally avoidable as a preference "unless the defendants demonstrate that the other party 'controlled the

---

[32] In this situation, a court would likely examine whether the use of a joint check payable to the debtor and the old creditor destroyed the defense.

[33] *Davidson*, 66 F.3d at 1568, n. 10 (*quoting Jensen v. Pen Air Conditioning, Inc. (In re Winsco Builders, Inc.)*, 156 B.R. 98, 100-01 (Bankr. M.D. Fla. 1993), although *Davidson* left out the bracketed word "insured")).

[34] *In Winsco Builders*, 156 B.R. at 100-01.

[35] *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177 (11th Cir. 1987).

application of the funds' by providing the monies 'only on condition' that a particular creditor receive the proceeds.'"[36]  *Chase & Sanborn* did not involve a joint payee check. The second case cited in *Davidson* is *Trinity Plastics*.[37]  It held that funds transferred to the debtor's supplier by a joint payee check were not property of the debtor only when the check was written by a customer who had guaranteed the debtor's obligation to the supplier.  The third and final authority is *Bohlen Enterprises*,[38] the citation of which is introduced by the signal "see generally."  The *Bohlen Enterprises* court, after a full discussion of the history of the earmarking doctrine, stated three requirements for the application of the doctrine:  "the existence of an agreement between the new lender and the debtor that the new funds be used to pay a specified antecedent debt; the performance of that agreement according to its terms; and the transaction viewed as a whole . . . does not result in any diminution of the estate."[39]  The use of a joint payee check was not discussed.

Fourth, other courts are not uniform in their application of the earmarking doctrine in joint check situations in the context of payments on construction projects.  *Diamond*

---

[36] *Id*. at 1181 (*quoting Smyth v. Kaufman*, 114 F.2d 40, 42 (2nd Cir. 1940)).

[37] *Rieser v. Bruck Plastics Co. (In re Trinity Plastics, Inc.*), 138 B.R. 203, 205-07 (Bankr. S.D. Ohio 1992).

[38] *McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enters. Ltd.*), 859 F.2d 561, 566 (8th Cir. 1988).

[39] *Id*.

16

*K*,[40] cited by Kice, was a preference action that found the debtor, a general contractor, had no interest in funds transferred by the project owner to a subcontractor by a joint check payable to the debtor and the subcontractor in accord with the debtor's request. "The Debtor [who sought to avoid the transfers] failed to submit any evidence that the joint checks were ever intended for the Debtor or that it had any authority over the funds represented by the joint checks sufficient to establish 'an interest of the debtor in property' within the meaning of § 547(b) of the Bankruptcy Code."[41] The court relied on *Davidson* and quoted *Winsco Builders*, the same case quoted by *Davidson*.

In contrast, other courts have found the earmarking doctrine is not applicable in similar circumstances. In *R.J. Patton*,[42] the Chapter 7 trustee brought an action to avoid as allegedly preferential a transfer that occurred when the debtor subcontractor endorsed a check that the general contractor had made payable to both the debtor and the debtor's supplier and allowed the supplier to cash the check in payment of the debtor's pre-existing debt. The earmarking doctrine was rejected as a defense since the joint check was not the proceeds of a third-party loan substituting one creditor for another.[43] In *Code*

---

[40] *Diamond K. Corp. v. Alpha Concrete, Inc. (In re Diamond K. Corp.)*, 2007 WL 2229727 (Bankr. E.D. Tex Aug. 2, 2007).

[41] *Id*. at *5.

[42] *Napolitano v. Vibra-Conn, Inc. (In re R.J. Patton Co., Inc.)*, 348 B.R. 618 (Bankr. D. Conn. 2006).

[43] *Id*. at 624.

Case 17-05074    Doc# 27    Filed 06/25/18    Page 17 of 36

*Electric*,[44] the district court affirmed a bankruptcy court holding that a debtor (Accord), a general contractor, had a sufficient interest in a joint check that a project owner (Rexwoods) had issued to both the debtor and a subcontractor (Code), for the transfer of the check to Code to be avoidable as a preferential transfer. The court reasoned:

> Rexwoods was never under any type of contractual obligation to pay Code directly, and Rexwoods never agreed to do so. Granted, Rexwoods was concerned about the possibility of liens being placed upon the project by Code and the other subcontractors, but Rexwoods' sole payment obligation nonetheless remained with Accord. Thus, when Rexwoods issued the check made payable to both Accord and Code, the payment was reflected on Rexwood's books as payment to Accord alone. The fact that the check was issued jointly simply assured Rexwoods that Code would be paid by Accord which would operate to negate Code's lien rights on the project.[45]

The Court finds the reasoning of *Patton* and *Code Electric* to be persuasive.

For the foregoing reasons, the Court rejects earmarking as a defense to the preference action against Kice. EKAE was not a guarantor of Debtor's obligations to subcontractors on the Project. EKAE did not extend credit to Debtor and require that the funds be used to pay Kice.

### 3. The funds paid to Kice are not excluded from the bankruptcy estate because EKAE had an independent obligation to make the payments.

As an alternative to the earmarking doctrine, Kice argues that the joint payee check did not transfer an interest of Debtor in property because of the independent obligation

---

[44] *Code Electric, Inc., v. Crampton*, 197 B.R. 807 (E.D.N.C. 1996).

[45] *Id*. at 809.

doctrine, as stated in *Davidson*. Under that doctrine, "when a general contractor pays a supplier [with whom it has no contractual relationship] on the basis of an independent legal obligation, those payments do not become part of the bankruptcy estate."[46] In support, *Davidson* cited *Arnold*,[47] where a contractor's payment of suppliers was found to be based on its obligation to the state to pay for material used on the project rather than its relationship with the bankrupt subcontractor. The rationale was that because of the independent obligation, the funds used were those of the payor, not the debtor.[48] In *Davidson*, where the general contractor had paid suppliers to the debtor, that independent legal obligation arose from the construction contract which obligated the general contractor to deliver the project free and clear from liens. Other cases have found a general contractor to have such an obligation under payment bonds to pay suppliers.[49]

But this is not a case where a general contractor paid suppliers because it had a duty to do so under the construction contract, a contract with a third person, or because of a payment bond. In this case, the owner of the Project issued a check jointly payable to the general contractor and the subcontractor. The uncontroverted facts do not show that EKAE made a payment to Kice independent of its obligation to pay Debtor for its work

---

[46] *Davidson*, 66 F.3d at 1567.

[47] *Crocker v. Braid Electric Co. (In re Arnold)*, 908 F.2d 52, 55 (6th Cir. 1990).

[48] *Id.* at 55-56.

[49] *Gold v. Alban Tractor Co., Inc.*, 202 B.R. 424 (E.D. Mi. 1996), *aff'd by unpub. op. sub nom. In re Gray Electric Co.*, 142 F.3d 433, available at 1998 WL 109989 (6th Cir. 1998); *Tri-Co., Inc., v. Star Building Systems (In re Tri-Co., Inc.)*, 221 B.R. 606 (Bankr. D. Mass. 1998).

19

on the Project.  Rather, except for the use of a joint payee check, the procedures used were those that EKAE routinely used pursuant to its contract with Debtor to pay Debtor, who then in turn paid its subcontractors.

Kice argues that an independent obligation for EKAE to pay it arose under the Kansas subcontractor mechanics lien law, and therefore there was no transfer of an interest of Debtor in property.  The Court rejects this contention.  "The object of the mechanic's lien [is] to secure the claims of those who have contributed to the erection of a building,"[50] even though there is no contractual relationship between the claimant and the property owner.[51]  The mechanics lien statutes cannot be used to create a claim which is enforceable other than as a lien.[52]  In other words, the liability created is in rem, not in personam.[53]  The existence of potential mechanics liens against EKAE's property did not create an obligation for EKAE to pay Kice.  It only provided EKAE with the motivation to assure Debtor paid Kice, which EKAE did through the joint check procedure.

Further, as stated above, even assuming there was such a independent duty, the uncontroverted facts do not evidence that the payment was made to fulfill that duty.  For several months prior to the payment, there were conversations about assuring that Debtor paid subcontractors.  Kice submitted conditional lien waivers to Debtor before the checks

---

[50] *Blue Tee Corp. v. CDI Contractors, Inc.*, 247 Neb. 397, 402, 529 N.W.2d 16, 20 (1995).

[51] 53 Am. Jur. 2d, *Mechanics' Liens*, § 1 (May 2018 update).

[52] *Id*. at § 5.

[53] *Id*.

20

were issued.  If EKAE was paying Kice because it believed that it had a duty to do so,

there would have been no reason for EKAE to obtain Debtor's consent to use a joint

check and no reason to issue a joint check payable to both Debtor and Kice.  EKAE

would have made the payment to Kice and then sought indemnification from Debtor.

The Court therefore rejects the contention that Debtor had no interest in the

property transferred by the joint check because EKAE had an independent obligation to

pay Kice.

### 4. Debtor's lack of possession of the funds transferred does not equate to the absence of an interest in the funds.

Kice argues that Debtor did not have sufficient control of the funds paid to it for

Debtor to have an interest in them for purposes of § 541.  In support, Kice cites *Marshall*,

the Tenth Circuit opinion discussed above that declined to apply the earmarking doctrine

to credit card balance transfers.  Before considering the earmarking doctrine, the Tenth

Circuit determined that, even though the debtors never had possession of the money

transferred, the transfer was a transfer of an interest of the debtors in property for

purposes of § 541 under the dominion/control test and the diminution of the estate test.[54]

"Under this analysis, a debtor's transfer of property constitutes a transfer of 'an interest of

the debtor in property' if it deprives the bankruptcy estate of resources which would

---

[54] *Marshall*, 550 F.3d at 1255-57.  The Tenth Circuit concluded that the payments to the old credit card creditor were "a debtor's discretionary use of borrowed funds to pay another debt.  Such transactions are generally considered preferential transfers.  The only exception to this rule is the earmarking doctrine."  *Id*. at 1257 (citation omitted).

otherwise have been used to satisfy the claims of creditors.'"[55]  As applied to the transfer of the credit card balance, it reasoned:

> Debtors drew on their Capital One line of credit; that draw
> converted available credit into a loan; Debtors directed
> Capital One to use the loan proceeds to pay MBNA; and
> Capital One complied.  It is essentially the same as if Debtors
> had drawn on their Capital One line of credit, deposited the
> proceeds into an account within their control, and then wrote
> a check to MBNA.[56]

Kice argues that this case is distinguishable from *Marshall* because "[a]t no point was the Debtor legally capable of exercising control over the funds."[57]

The Court finds that Debtor exercised control over the funds.  The components of the transfer were the following:  Debtor was owed funds by EKAE for work performed on the Project, including work performed by Kice under its subcontract; Debtor determined the amount owed to Kice; Debtor agreed that a portion of the funds EKAE owed it could be used to pay Kice through the use of a joint payee check; Debtor obtained conditional lien waivers from Kice; EKAE issued a check jointly payable to Debtor and Kice; Debtor endorsed the joint payee check; Debtor delivered the check to Kice; and Kice deposited the check.  Through these transactions, Debtor authorized the use of a portion of the account receivable EKAE owed it for the payment of Debtor's obligation to Kice.  The events that occurred are essentially the same as if EKAE had paid Debtor and

---

[55] *Id*. at 1256.

[56] *Id*.

[57] Doc. 18 at 19.

22

Debtor had then paid Kice in accord with the contractual procedures.  In essence, Debtor paid Kice for an antecedent debt within 90 days before Debtor filed for bankruptcy relief. Although Debtor did not have physical control of the funds and did not have possession of the joint payee check, it exercised control of the disposition of its account receivable. Debtor's bankruptcy estate's interest in its accounts receivable was reduced by the amount of the payment.

Nevertheless, Kice argues that because EKAE had the right under its contract with Debtor to withhold payment from Debtor if subcontractors were not paid, Debtor had no legal right to immediate payment and therefore it lacked control over the funds.  Kice relies on sections 9.4.4.2 and 10.1.1.1 of Debtor's Contract with EKAE as the source of this right.  But these sections do not directly confer a right on EKAE to withhold payment.  However, assuming such a right, the absence of a legal right to immediate payment does not equate to the absence of any interest in funds EKAE used to make the payment.  A bankruptcy estate includes all legal and equitable rights in property, not only property in which Debtor had full legal title.  Further, the uncontroverted facts establish that Debtor did exercise control through its cooperation with the payment procedure adopted.  It prepared and received the lien waivers from Kice, determined the amount EKAE owed it for the Project, determined the amount it owed to Kice, and endorsed the joint payee check.

### D.  Subsection 547(b)(5) is satisfied.

Kice argues that the transfer does not satisfy the § 547(b)(5) requirement that a

23

preferential transfer enable the creditor to receive more than it would have received had the transfer not been made. Kice's argument is predicated on an interplay of the Bankruptcy Code setoff provision, § 553, and the Kansas subcontractor lien statute, K.S.A. 60-1103. Kice argues that under these authorities, the owner of a project who makes a direct payment to a subcontractor to satisfy a lien has a right of setoff against the contractor for the amount paid to the subcontractor.[58] This is true under K.S.A. 60-1103(d), which provides "[t]he owner may discharge any lien filed under this section which the contractor has failed to discharge and credit such payment against the amount due the contractor." If Kice had filed a lien statement, EKAE could have used its own funds to pay Kice and get the lien released, and then offset that payment against the amount it owed Debtor. In that event, there would be no basis to argue that there was a preference, because Debtor would have had no interest in the funds transferred to Kice and the estate would not have been diminished.

But that is not what happened here. No lien statement had been filed. Debtor's

_____

[58] This argument is closely related to the new value defense under § 547(c)(1), discussed below. Some court have held that both defenses, the failure to satisfy § 547(b)(5) and the contemporaneous exchange of new value under § 547(c)(1), are available when the preferential transfer defendant held a contractual right to setoff at the time the payment was received. *Mason and Dixon Lines, Inc., v. St. Johnsbury Trucking Co. (In re Mason and Dixon Lines, Inc.)*, 65 B.R. 973, 975-79 (Bankr. M.D.N.C. 1986); *R.M. Taylor, Inc., v. H.M. White, Inc. (In re R.M. Taylor, Inc.)*, 257 B.R. 289, 292-96 (Bankr. W.D.Mo. 2000). However, because in this case no lien statement had been filed and Kice's inchoate lien right was with respect to real property not owned by Debtor, the Trustee's obligation to show that Kice received more than it would have received in a liquidation is satisfied, and the burden is on Kice to show the absence of a diminution of the estate. *See Liquidation Committee v. Binsky & Snyder, Inc. (In re J.A. Jones, Inc.)*, 361 B.R. 94, 102, n. 7 (Bankr. W.D.N.C. 2007) (because stipulation assumed preference defendants had no liens against debtor property, court treated argument under § 547(c)(1) as affirmative defense).

account receivable was directly reduced by the amount of the payment to Kice.  Debtor's bankruptcy estate was diminished, and Kice received 100% of its claim, rather than being paid as an unsecured creditor.  These are the hallmarks of a preferential transfer.

**E.  The Court finds that Kice has failed to show that the transfer to Kice by the joint check was not preferential.**

The Court therefore concludes that Kice has failed to show the payment to Kice of $118,191.35 was not preferential.  Debtor had an interest in the property transferred.  The transfer was the satisfaction of Debtor's obligation to Kice accompanied by an equal and contemporaneous reduction in the account receivable EKAE owed Debtor.  The use of a joint payee check was a device to assure that the payment to Debtor was applied to Debtor's obligation to Kice, but the use of a joint payee check did not alter the substance of the transaction.  Under the facts of this case, neither the earmarking doctrine, nor EKAE's interest in avoiding a mechanics lien on its property, nor Debtor's lack of physical possession of the funds transferred establish that Debtor lacked an interest in the property transferred.  The possibility that EKAE may have had a setoff right if it had independently satisfied a lien filed by Kice or satisfied Kice's inchoate lien rights does not mean that the transfer did not allow Kice to receive more on its claim than if the transfer had not been made.

**F.  The new value defense**

Having found that Kice has failed to show that the transfer was not preferential, the Court next considers whether the new value defense of § 547(c)(1) is applicable.  It

25

provides:

> (c)The trustee may not avoid under this section a transfer —
>
> (1) to the extent that such transfer was —
>
>> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>> (B) in fact a substantially contemporaneous exchange.

New value is defined by § 547(a)(2) as including the "release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law." The release of a lien comes within the definition.[59] "Section 547(c)(1) protects transfers that do not result in a diminution of the estate — unsecured creditors are not harmed by the targeted transfer if the estate was replenished by an infusion of assets that are of roughly equal value to those that were transferred."[60]

Typically, the new value defense is applicable when the creditor who received the transfer from the debtor also provided the new value. However, new value may also be provided by a third party.[61] "There is nothing in § 54[7](c)(1) requiring the transferee-

---

[59] *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.)*, 792 F.2d 125, 127-28 (10th Cir. 1986).

[60] *Moses*, 256 B.R. at 652.

[61] *Id.*

26

creditor to provide new value."[62]  A creditor raising this defense asserts that when it received payment from the debtor, it caused a third party to provide value to the debtor. If the value provided to the debtor equals or exceeds the preferential payment to the creditor, the estate is not diminished and § 547(c)(1) provides a defense.  "Commonly, the 'indirect transfer' defense theory is asserted when:  (1) the debtor owes a debt to its creditor; (2) the creditor has recourse in some form against the third party if the debtor defaults; and (3) . . . the creditor could exercise its rights against the third party, as a result of which the third party may invoke indemnification rights against the debtor."[63]

Subcontractors have successfully relied on the new value defense in preference actions where a bankrupt general contractor obtained waivers of filed liens in exchange for payment of the subcontractor's antecedent debt, resulting in the release of the project owner's right to indemnification from the general contractor if the owner had paid for the release of the lien.  For example, in *Philip Services*,[64] Homrich, a subcontractor of debtor Philip, the general contractor on a project to build a powerhouse, filed a lien on the project when it was not paid by the debtor.  Within 90 days before filing for bankruptcy, the debtor delivered a check to pay Homrich and received a lien waiver.  The construction documents required Philip to keep the job free of liens and authorized the owner to

---

[62] *Id.*

[63]*Instrumentation and Controls, Inc. v. Northeast Union, Inc. (In re Instrumentation and Controls, Inc.)*, 506 B.R. 677, 679 (Bankr. E.D. Pa. 2014).

[64] *Lovett v. Homrich, Inc. (In re Philip Services Corp.)*, 359 B.R. 616, 631-34 (Bankr. S.D. Tex. 2006).

27

withhold payments from Philip to the extent necessary to pay any liens. After rejecting

contentions that the transfer was not preferential under the earmarking doctrine and other

defenses, the court held that Homrich's release of its construction lien was new value

because the release caused the owner to pay debtor Philip cash exceeding the amount of

the payment, which the owner otherwise would have retained to satisfy the lien on its

property. It reasoned the owner's right to withhold payment when a lien was filed "was,

effectively, a lien on Debtor's account receivable from [the owner of the powerhouse]

which was released, dollar for dollar, when the lien was released."[65] Most courts have

held that the release of a filed lien in exchange for payment constitutes new value.[66]

 In this case, Kice relies on the indirect transfer theory of the new value defense and

argues that the transfer to Kice by the joint check "was intended by the parties to be a

contemporaneous exchange for new value and was in fact a substantial[ly]

contemporaneous exchange because, on receipt of payment, Kice gave up its right to file

a lien against EKAE's property."[67] "If Kice was not paid by [Debtor] WB, then Kice

could have filed a lien against EKAE's property; EKAE could have then paid Kice the

$118,191.35, and EKAE would have had a right of setoff against [Debtor] WB for that

---

[65] *Id*. at 632.

[66] William H. Henley, *Worlds in Collision: Mechanic's Liens and Federal Bankruptcy Schemes Confront Each Other and How the Courts Reconcile the Conflict*, 31 Whittier L. Rev. 621, n. 93 (2010).

[67] Doc. 18 at 23.

amount by virtue" of the Kansas subcontractor lien statutes.[68]

The Court finds that under *Philip Services* and similar cases, the elements of the new value defense of § 547(c)(1) would have been satisfied if Kice had filed a subcontractor's lien statement for $118,191.35 before it was paid by Debtor. There is no question that the exchanges in this case were intended to be and in fact were contemporaneous.[69] Further, EKAE would have given new value to Debtor indirectly when EKAE lost its right to set off the payments it would have made to release the filed lien against the funds it owed Debtor.[70] Under K.S.A. 60-1103, Kice had the right to file a subcontractor's lien against EKAE's property. Under that statute, and the similar statutes providing for a contractor's lien rights,[71] the lien attaches when the work is begun, but a lien statement must be timely filed for the lien to be valid and enforceable.[72] The owner of the property subject to a subcontractor's lien is given a statutory right to "discharge any lien filed under [K.S.A. 60-1103] which the contractor fails to discharge

---

[68] Doc. 26 at 7.

[69] In this case, the conditional lien waivers were executed on February 24, 2016. The joint check was deposited by Kice on March 7, 2016, at which time the conditional lien waivers became effective. The parties intended the waivers to be contemporaneous with the payment. The value to Debtor was contemporaneous with the payment since it was the effectiveness of the lien waivers that removed EKAE's potential setoff right.

[70] This statement assumes that EKAE's debt to Debtor equaled or exceeded the amount it was entitled to set off.

[71] K.S.A. 60-1101 and -1102.

[72] *Lewis v. Wanamaker Baptist Church*, 10 Kan. App. 2d 99, 99-100, 692 P. 2d 397, 398 (1984); *J. Walters Constr. Co. v. Greystone South Partnership*, L.P., 15 Kan. App.2d 689, 691, 817 P.2d 201, 204 (1991).

and credit such payment against the amount due the contractor."[73]  In addition, the

contract between Debtor and EKAE obligated Debtor, if it was paid in accordance with

the contract, to keep the Project property free of all liens filed against the Project, and

provides that if Debtor fails to take such action, EKAE "may cause the lien to be

removed" at Debtor's expense.[74]  Further, Debtor agreed to hold EKAE harmless from all

costs and expenses related to any lien.[75]  It is therefore clear that an indirect benefit would

have been provided to Debtor if Kice had filed a mechanic's lien statement before

receiving the payment, the lien had been released as a condition of the payment, and

EKAE had owed Debtor funds at least equal to the amount of the lien.

 The question becomes whether Debtor received the same new value even though

Kice had not filed a subcontractor's lien statement before executing the conditional lien

waivers, so its lien rights were still inchoate.  *J.A. Jones*[76] is a leading example of a case

holding that the elements of the new value defense are satisfied when the released lien

rights are inchoate.  Before its bankruptcy, Jones served as the general contractor on

projects throughout the world.  Under confirmed liquidating Chapter 11 plans, numerous

subcontractors were sued to recover payments made within 90 days prepetition.  At the

---

[73] K.S.A. 60-1103(d).  *See Dick v. LaVilla Inns, Inc.,* 212 Kan. 101, 510 P.2d 188 (1973).

[74] Contract, § 9.2.4.2 (quoted above and at Doc. 18 at 3).

[75] Contract, § 10.1.1.1 (quoted above and at Doc. 18 at 3).

[76] *In re J.A. Jones, Inc.*, 361 B.R. 94.  *J.A. Jones* has been followed in *Askenaizer v. Seacoast Redimix Concrete, LLC (In re Charwill Construction, Inc.)*, 391 B.R. 7, 11-12 (Bankr. D.N.H. 2007) and *In re Instrumentation and Controls, Inc.*, 506 B.R. at 680.

time of payment, each defendant possessed inchoate lien rights that it released in exchange for the payments. The subcontractors moved for summary judgment on common issues. One of those issues was the indirect transfer theory of the new value defense, under which a subcontractor's release of its potential lien "against the owner causes a coincident release of the owner's claims against [the] debtor, thereby creating new value to the debtor."[77] The court held that such a release could provide new value. The court explained the rationale of the defense as follows:

> The 'indirect transfer' theory assumes that had the debtor general contractor not paid its subcontractor, the subcontractor would have 'liened' the project. The owner would be forced to pay the subcontractor, and having done so, would seek indemnification, by a setoff against other sums owed to the debtor. Section 553 preserves setoff rights in bankruptcy and the Code treats setoffs as secured claims. *See* 11 U.S.C. § 506(a). Given this, the indirect transfer theory posits that the bankruptcy estate is not harmed by the pre-petition payments to the subcontractors.[78]

The *J.A. Jones* court's extension of the new value defense to the release of an inchoate lien was supported by the commercial realities of the construction industry. Noting that § 547 requires the court to hypothesize what the creditor would have received in bankruptcy if the transfer had not been made, it found that no reasonable subcontractor would fail to file a lien statement if it were not paid by the general contractor, and that no rational project owner would fail to satisfy the lien and seek indemnification from the

---

[77] 361 B.R. at 102.

[78] *Id.*

general contractor. "A subcontractor would not long remain in business if it made a practice of refusing payments from its general contractor in favor of enforcing lien rights against the underlying project."[79] In other words, the relationships in the construction industry and the protections given subcontractors by the lien statutes combine to promote the satisfaction of a subcontractor's obligations by the project owner. Under the *J.A. Jones* rationale, an essential element of the defense is that the property owner, at the time of the transfer and the potential lien release, owed the general contractor sufficient funds on the project to permit setoff of the owner's payment to the subcontractor, if the debtor had not made the payment and the subcontractor had looked to the owner for payment.[61] If there were no debt to the general contractor to set off, the owner's claim for indemnification would simply be an unsecured claim and there would be no "new value."

This Court finds the reasoning of the *J.A. Jones* court to be sound. The filing of a lien statement is not critical to the estate's receipt of new value when the subcontractor is paid. The smooth functioning of the construction industry would be compromised if the filing of a lien were required for a subcontractor dealing with a financially-troubled general contractor to protect itself from a preference action. The purpose of the new value defense "is to encourage creditors to continue to deal with troubled debtors without

---

[79] *Id.* at 103.

[61] When noting that there is a division in the case law on whether the new value defense applies when the lien rights released were inchoate rather than choate, the *J.A. Jones* court concluded that the "split is not as wide as it initially appears" because the outcome often turned on the question whether there were sufficient funds owed to the general contractor against which the transfer could be set off. *Id.* at 102-03.

fear that they will have to disgorge payments received for value given."[62]  Requiring a subcontractor to file a mechanic's lien to assure it can retain a payment received from its general contractor would undercut that purpose.[63]  The interplay of the lien statutes and the Bankruptcy Code's preservation of setoff rights under § 553 support the availability of the new value defense for the subcontractor when the project owner owes the debtor general contractor at least as much as the debtor pays its subcontractor and simultaneously receives a waiver of inchoate lien rights in the project owner's property.

The Trustee argues that the Court should disregard *J.A. Jones* because it "is founded upon flawed statutory construction" and that EKAE, not the Debtor, received property as a result of the release of Kice's lien rights.[64]  This position fails to appreciate that the indirect value theory of new value looks to the value the debtor received from the third party, not the value it received directly from the subcontractor-creditor who received the preferential payment.  Section 547(c)(1)(A) requires that new value be "given to the debtor."  In the circumstance where a subcontractor's lien on a construction project is waived because the debtor general contractor pays the subcontractor's bill, it is true that the debtor is not directly benefitted.  But the Code does not require that the new value be

---

[62] 5 *Collier on Bankruptcy*, ¶ 547.04[1] at 574-44.

[63] The Tenth Circuit BAP in *Bryant v. JCOR Mechanical, Inc. (In re Electron Corp.)*, 336 B.R. 809, 812-13 (10th Cir. BAP 2006) held that the trustee's preference claim failed to satisfy § 574(b)(5) when payment by the debtor to its materialman resulted in the satisfaction of an inchoate lien, rather than a filed lien, on the debtor's property.

[64] Doc. 22 at 13-14.

provided by the creditor that received the transfer; it only requires that the debtor be the recipient of new value. When the subcontractor is paid and releases its lien rights, the new value to the debtor is received indirectly, from the project owner by the release of its right to indemnification from the general contractor if the subcontractor were to file a lien and the owner were to pay the subcontractor to get the lien released.

As discussed above, there are at least two factual elements in the application of the indirect new value defense when a subcontractor is paid. First, the third party providing the value must have a valid right of setoff or indemnification that would be allowed under § 553. That right could arise under statutory law or the contract documents. Second, the amount the third party is entitled to set off must be at least equal to or in excess of the amount of the challenged preferential transfer.

In this case, the uncontroverted facts are not sufficient for the Court to grant Kice summary judgment under the indirect benefit new value defense. Kice has not shown that EKAE held a right of setoff or indemnification before the transfer was made. Under the Kansas subcontractor lien statute, the project owner's right to discharge a lien applies only to "any lien filed" under K.S.A. 60-1103 and therefore not to an inchoate lien. It is not clear that the portions of the Contract between EKAE and Debtor that the parties supplied to the Court grant EKAE a right of payment from Debtor where the lien on the Project is inchoate. Section 9.2.4.2 unambiguously applies only to filed liens. Section 10.1.1.1 requires Debtor to hold EKAE harmless from all expenses related to "all liens, charges, claims and judgment, security interests or encumbrances." Although the Court

34

would certainly consider arguments to the contrary, it appears that this section does not cover inchoate liens. Of course, sections of the Contract not provided to the Court could provide a basis for setoff.

In addition, assuming that EKAE had a right of setoff, the uncontroverted facts are insufficient for the Court to determine whether that right would extend to the full amount of the preferential transfer. The lien releases are for $82,661.35, raising the possibility that any right of setoff could be limited to this amount, even if EKAE was indebted to Debtor for $118,191.35.

**CONCLUSION.**

For the foregoing reasons, the Court denies Kice's motion for summary judgment. The uncontroverted facts relating to the transfer of $118,191.35 by Debtor WB to defendant Kice by the joint payee check dated March 4, 2016, do not establish that any of the elements of a preferential transfer under § 547(b)(1) are not satisfied. However, the Court finds that the new value defense under § 547(c)(1) may be applicable under the circumstances of this case, but denies summary judgment because the uncontroverted facts are not sufficient to rule on the defense.

A status conference shall be scheduled to discuss future proceedings, including the selection of a trial date for an evidentiary hearing.[65]

**IT IS SO ORDERED.**

_____

[65] The Court anticipates that the trial will be limited to the new value defense, since it appears that the Trustee has established the elements of a preferential transfer.

35

# # #

36